IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RUBERCY A. GUZMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 17-1831 |

O P I N I O N

JACOB P. HART                                             DATE: March 20, 2019
UNITED STATES MAGISTRATE JUDGE

      Rubercy Guzman brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded, and has also filed a reply. I will remand for consideration of the evidence regarding manipulative limitations, and the taking of additional vocational evidence, if necessary.

I.     Factual and Procedural Background

      Guzman was born on October 16, 1975. Record at 151. He completed high school. Record at 186. He worked in the past as a machine operator, and as a manager for a retail electronics store. Id. At the time of his hearing, he weighed around 300 pounds. Record at 49.

      On May 6, 2010, Guzman underwent an arthroscopy and resection of his left shoulder. Record at 286. On May 31, 2013, he underwent a discectomy of his lumbar spine at L4-5 to correct a herniation with radiculopathy. Record at 409. He underwent fusion surgery at L4-5 a year later, on May 6, 2014. Record at 428. Also, on September 27, 2013, Guzman had a cervical discectomy and fusion with bone graft on his cervical spine, because of a herniated disc and degenerative disease with radiculopathy at C5-6 and C6-7. Record at 298.

On February 5, 2014, Guzman filed his application for DIB. Record at 151. In it, he alleged disability since December 15, 2009, on the basis of back and shoulder injuries and neck pain. Record at 185. It was denied initially and upon reconsideration. Record at 74, 84. Guzman then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 106.

A hearing took place in this matter on July 7, 2016. Record at 43. On September 1, 2016, however, the ALJ issued a written decision denying benefits. Record at 24. The Appeals Council denied Guzman's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the

following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.   The ALJ's Decision and Guzman's Request for Review

In her decision, the ALJ found that Guzman had the severe impairments of degenerative disc disease of the cervical and lumbar spines; left shoulder arthritis; and obesity. Record at 31. At step three of the sequential evaluation, she wrote that no impairment and no combination of impairments met or medically equaled the severity of one of the listed impairments. Id.

The ALJ determined that Guzman retained the following residual functional capacity ("RFC"):

> The claimant can perform sedentary work (lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 hours in an 8-hour day; and sit 6 hours in an 8-hour day). The claimant is able to occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He can never climb ladders, ropes, scaffolds, or crawl. He is able to occasionally operate foot controls with the left lower extremity and is able to occasionally push/pull with the left lower extremity. The claimant is able to frequently reach overhead with the left upper extremity, and is able to frequently push/pull with the bilateral upper extremities. Due to his impairments, the claimant would be absent from work once per month. Due to the need to alternate from sitting to standing, the claimant

3

>would be off task 5% of the day. The claimant would require the use of a handheld assistive device for ambulation and balance.

Record at 32.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Guzman could work as an order clerk, assembler, or preparer. Record 37. She decided, therefore, that he was not disabled. Record at 37-8.

Guzman argues in his Request for Review that the ALJ erred in finding that his lumbar spine impairment did not meet or equal Listing 1.04. He also argues that the ALJ's RFC assessment was inadequate in that she failed to consider the effect of his pain upon his ability to work; and failed to consider the limitation in his use of his hands and fingers.

IV.     Discussion

A.     Listing 1.04

Listing 1.04A, to which Guzman points, requires a showing of a spinal disorder "resulting in compromise of a nerve root … or the spinal cord," as well as:

>Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 CFR Pt. 404, Subpart P, App. 1, §1.04A.

The ALJ dismissed §1.04A rather summarily, stating only that the record did not meet or equal the criteria of that Listing section. Record at 31, 32. However, Guzman is not entitled to relief, because he has not shown that remand for a fuller discussion would affect the outcome in this case.

4

As to meeting the listing, Guzman has not shown motor loss, which in this context requires muscle atrophy or muscle weakness. He points to an October 6, 2015, note from Douglas J. Spiel, MD, his orthopedic surgeon, who rated his left hip flexion, knee extension, and dorsiflexion as 4+/5. Record at 512. This is a loss of strength, but it is very minor. Dr. Spiel also found that Guzman's plantar flexion on the left was 5/5, and his right lower extremity muscle strength was 5/5 in all respects. Id.[1] In May, 2016, Betty Vekhnis, MD, a consulting examining physician, found no focal weakness in Guzman's legs. Record at 515. Because Guzman did not prove that he experienced the motor loss required by §1.04A, he has not demonstrated that the ALJ's summary conclusion in this regard was inadequate.

In his reply memorandum, Guzman argues that "Defendant, it its responsive brief" discussed the "technical elements of Listing 1.04" but "never addressed the separate and distinct issue of medical equivalence." Reply at 2. This is true, but it is not surprising, given that Guzman did not specifically argue in his Request for Review that his back impairment medically equaled Listing 1.04.[2]

Even in his Reply, Guzman has not set forth a coherent argument in this regard. Rather, he has simply followed his declaration that his lumbar condition medically equaled Listing 1.04 with a rather random selection of verbatim quotes from notes describing MRI and x-ray results, which contain both relevant and irrelevant findings.[3]

---

[1] Dr. Spiel made similar notes of 4+/5 and 5/5 strength regarding Guzman's upper extremities, but these are probably irrelevant to his argument here, which specifically pertains to his lumbar spine.
[2] In his Request for Review, Guzman stated that "The ALJ should have found Mr. Guzman's lumbar spine impairment met **or equaled** Listing 1.04A." Memorandum of Law at 48. However, his argument does not include a definition of medical equivalence or any explanation of how his lumbar impairment, or combination of impairments, equaled Listing 1.04.
[3] For example, he included this passage: "November 25, 2013, x-rays of the cervical spine revealed anterior interbody fusion/discectomy C5-6, C6-7 with hardware and spacers in good position. There was no evidence for dynamic vertebral instability in flexion and extension and no foraminal stenosis was demonstrated." Reply at 4. Far from supporting his argument, this actually tends to contradict it.

Medical equivalence to a listed impairment is found where a claimant (a) cannot show all the findings set forth in a listing, but has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria;" (b) has an impairment not described in the listings, but has another impairment of at least equal medical significance; or (c) has a combination of impairments, no one of which meets a listed impairment, but which combine to demonstrate findings of equal medical significance to a listed impairment. 20 CFR §404.1526.

The medical notes cited by Guzman appear to show nothing more than that he had the degenerative disease in the lumbar spine and left shoulder from which the ALJ found him to suffer. Record at 31. Thus, Guzman has not shown that the ALJ erred in deciding that medical equivalence was not present.

B.   Pain

Guzman argues that the ALJ did not properly accommodate his pain, especially that in his lumbar spine. He testified that he had back pain daily that radiated down his left leg. Record at 59-60.

Unquestionably, the medical record supports Guzman's claim to have suffered from long-standing lower back pain. Both of his lumbar surgeries were preceded by treatment notes recording complaints of pain. For example, Francis Pflum, MD, Guzman's orthopedic surgeon wrote on May 6, 2013: "[T]his patient has a left-sided herniated disk at L4-5, objective evidence of radicular pain attributable to a herniated disk on the left side at L4-5. He became much more symptomatic after a motor vehicle accident on March 21, 2012, and I believe it is evident that the patient has pathology that would benefit by a discectomy an[d] annuplasty done at L4-5." Record at 407.

Preceding the 2014 fusion surgery, Dr. Pflum wrote: "His biggest problem … is his lumbosacral spine. He is status post an endoscopic discectomy with tubular access and his pain persists. If he walks for a substantial distance he has increased pain and weakness in his back and lower extremities, the left more than the right. He actually has a burning sensation in his left lower extremity." Record at 426.

Significant lumbar pain is also reported in all of Guzman's 2013-2014 physical therapy notes. Early in his treatment, Guzman indicated pain at 2-3 or 3-4 on a ten-point pain scale. Record at 321-338. During the second half of his treatment, however, he indicated pain at 7-8, and once at 10. Record at 339-347.

The ALJ included in her RFC assessment several accommodations to address Guzman's back pain. She noted that he required the use of a cane for ambulation. Record at 32. She also credited his testimony that he was not comfortable sitting or standing for extended periods of time; this is shown by her specification that he would be off-task 5% of the day due to his need to alternate positions. Id. Further, she specified that "due to his impairments," Guzman would be absent from work once per month. Id.

Although Guzman argues that these accommodations do not adequately address his pain, the ALJ did cite substantial evidence in support of her conclusion that his representations of disabling pain were not fully supported by the record. She particularly noted that, five weeks after his May, 2014, fusion surgery, he told his doctor that he would be flying to the Dominican Republic for three weeks. Record at 32, 449. He testified that he traveled there again in 2015. Record at 65. The flight took three and a half hours. Id. He was also able to drive himself for 40 minutes to the hearing. Record at 48. The ALJ also noted that, in May, 2016, Guzman told Dr. Vekhnis that he usually took Motrin for his pain, "oxycodone very seldom." Record at 32, 514.

As a whole, therefore, the ALJ demonstrated a substantial evidentiary basis for concluding that, although Guzman suffered from lumbar pain in his back and lower extremities, it did not preclude work with the accommodations included in the RFC assessment.

C.     Manipulative Limitations

Guzman maintains that the ALJ erred in failing to include a limitation in the RFC pertaining to his use of his left hand for handling, fingering or feeling. The only examining physician to comment on this issue, Dr. Vekhnis, found that Guzman retained the ability to oppose his fingers, separate papers and fasten buttons with his left hand. Record at 516. However, she concluded that he could handle, finger, or feel with his left hand only occasionally. Record at 522. On the other hand, Seung Park, MD, the agency reviewing physician, despite recording Guzman's claim that he was "unable to fully use hand due to weakness and numbness," found him to suffer from no manipulative limitation. Record at 86, 92.

The ALJ did not explain why she favored Dr. Park's findings over Dr. Vekhnis's, regarding Guzman's use of his left hand. Indeed, she did not discuss either doctor's findings regarding manipulative limitations.[4] Further, her comment on Dr. Vekhnis's report indicated that she intended to reach a *more* restrictive RFC than indicated by Dr. Vekhnis.[5]

Certainly, the record contains repeated mentions of pain, numbness, and tingling in Guzman's left, or both, hands. Record at, e.g., 252, 266, 348, 353, 357, 361, 443, 539. Generally, this appears to have been treated as part of his cervical spine degenerative disease,

---

[4] The ALJ summarized Dr. Park's evidence as follows: "DDS found the claimant could lift and carry less than 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 hours in an 8-hour day; sit 6 hours in an 8-hour day; and perform unlimited pushing and/or pulling within the given weight restrictions. The claimant can climb ramps and stairs occasionally but cannot climb ladders, ropes, or scaffolds. The claimant can balance, stoop, kneel, and crouch occasionally, but cannot crawl." Record at 35.

[5] The ALJ wrote: "The undersigned notes that Dr. Vekhnis's report is based on only a single examination of the claimant. The undersigned gives partial weight to Dr. Vekhnis's opinion under 20 CFR §404.1527, since she did not assess time off-task due to the need to alternate from sitting to standing and did not assess the absences that the claimant would have due to his impairments." Record at 35.

although on December 13, 2013, he was diagnosed with mild bilateral carpal tunnel syndrome. Record at 303. Also, Guzman mentioned numbness and stiffness in his fingers as early as his Disability Report. Record at 196, 198. He described numbness in his hands at the hearing, and testified that this prevented him from playing his guira (a hand-held musical instrument). Record 60, 66.

Therefore, it is not apparent that the ALJ's failure to include any limitation pertaining to Guzman's use of his hands is supported by the record. As Guzman has pointed out, this matter is material to this case. The three jobs which the ALJ found him capable of performing require frequent handling; two of them require frequent fingering; and the third requires occasional fingering. Selected Characteristics of Occupations at 283, 290, 335. This casts doubt on the ALJ's conclusion that Guzman could work.

For this reason, I will remand this matter to the agency for a specific finding regarding Guzman's manipulative limitations, if any, and for explanation of the basis for such a finding; and for the taking of additional vocational testimony – if manipulative limitations are found – to determine whether (a) he is capable of performing the jobs already identified; or (b) other jobs exist which he is capable of performing.

V.       Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ should be reversed in part, and the matter remanded to the Agency for a finding regarding Guzman's manipulative limitations, if any, and for the taking of additional evidence from a vocational expert employing hypothetical questions including any manipulative limitations found to exist.

BY THE COURT:

/s/ Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE